Thank you. May it please the court, my name is Michael Grunfeld on behalf of the plaintiff appellant, the Smallen Trust. This case relates to plaintiffs claims for securities fraud against Western Union and its top executives claiming that they made false and misleading statements about the compliance. The issue on appeal is limited to the district court's decision on Santer. The district court held that the complaints adequately alleged false and misleading statements of legal compliance but held that the complaint did not adequately plead Santer. Let me ask you this counsel in regards to Santer, which of the categories on Santer that you're alleging, is it the government investigation or the board meeting, which is your best argument as to what you're relying on for Santer? Well the Supreme Court has held that Santer is judged holistically so all of the different types of allegations that support Santer have to be looked at in total and the court is required to make a common-sense judgment about what inference is, which inferences are not stronger but whether the plaintiff's inference is at least equally as strong. So I'll go through each of the categories of evidence that support Santer but looking at, and I'll get into that in a little more detail in a few moments, but looking at the settlement that Western Union reached with the government, primarily with DOJ and the FTC, that by itself provides extremely strong evidence of Santer. There's also evidence in the company's materials of the individual defendants being made aware of the types of issues that are raised in the joint settlement with the government regulators. So that's more than red flags, that's actual knowledge or at least being given the information showing the evidence that their statements were false. Let me ask a question about what compliance means. Does it mean that there'll be no improper wiring of funds for Western Union? It means that they'll take the required steps, reasonable steps I assume, to prevent that sort of thing from happening. That's right. So there might be still bad apples in Western Union's system. Someone's hired and he's corrupted, he or That's not a violation of their... That's right. The allegations here go much further than that and the company even admitted to the DOJ that it lacked entirely an adequate system of compliance, not just that there were bad apples within the hundreds of thousands of agents that the company has. So being advised that there was a bad incident or they had a really bad actor in the systems are failing as long as they take prompt steps to deal with it. Is that correct? As long as they take adequate steps. But the evidence here shows that they did not take those adequate steps. And that the defendants did not... And that defendants knew that they had not taken adequate steps. That's right. And before delving a little more into the facts, I'd like to... Well, you counsel, I'm telling you up front, you should be really... Because you're going to have to remember the facts. I have never seen a complaint of 176 pages consisting of 580 paragraphs in my life. And I've been at this a long time. So I'm not searching all of this out. I mean, you better be pretty specific and right to the point. I plan to do that, Your Honor. One point before delving into that is the three is that the district court applied the wrong standard for Sienter. Two is the district court did not actually engage with the facts. And three is the district court failed to address the issue of corporate Sienter. On the wrong standard, the district court expressly held when it made its key holding on page 70 of its inference of Sienter, the defendant's competing inference of poor business judgment was equally strong. If that's what the district court found, that actually compels a finding that the complaint adequately alleged Sienter because the Supreme Court held in Taleb's that if the inferences are equally strong, that suffices to show Sienter. But beyond the legal standard, the district court also did not engage with the facts. Granted, there's a When the district court attempted to discuss what the facts supporting Sienter were, what it actually did was just recite allegations of false and misleading statements. It did not delve into the factual bases showing that the defendants had knowledge of the compliance problems. So now to jump into those facts. Firstly, an important issue here is the timing of how far into the large point in their brief to try and argue that the compliance problems ended in 2012 because that's when the time period that the company was willing to admit to the DOJ that it did not have an adequate compliance system ended. But the FTC found that the company knowingly did not have an adequate compliance system through October 2015. And the FTC didn't find that the system was okay after that. That's just the cutoff for when the FTC reviewed factual information. So for purposes of pleading in a complaint, the fact that the FTC found based on its review of internal reports and hundreds of thousands of transactions and what the FTC called obvious signs of fraud, that goes a long way towards showing that there's an inference that this information was known or at least recklessly ignored by the defendants. Now to point to some specific pieces of evidence, the complaint cites specific board materials where both the types of reports that are referenced in the government settlement and also the types of violations that are referenced in the settlement are discussed. So for example, there's a July 2013 board meeting where there was a presentation given to the board, the individual defendants attended that meeting and that July 2013 report discusses a fraud policy report where it was discussed how there was an agent in India that was engaging in obvious signs of fraud and even four months later when it was discussed at the board meeting, it still hadn't been remedied. The types of fraud that were at issue with that agent are exactly the types that are raised in the government settlement and the failure to procedures that are referenced in the settlement. Well, help me out here, is this going along with your, I think your words were the collective signer or so dramatically false signer, is that where you're, and do you have any Tenth Circuit cases that that identify that type of... Well, plaintiff's view is that corporate signer is an independent basis for actually show the individual defendant signer because they attended these board meetings and had received these materials at the board meetings. But that's, so that's not collective. That's not collective signer. Okay. Separately, there's a basis for corporate signer, which is that courts around the country hold that if an executive who's high up enough in the company has knowledge that the company's statements are false and misleading, that knowledge can be attributed to the company. As the Tenth Circuit said that. I don't think the Tenth Circuit has ruled either way. And the defense has acknowledged that in their brief also. But this is an extraordinarily strong case for the Tenth Circuit to rule on that because it's unusual for a company to admit that it engaged in knowing and willful violations of AML laws. Similarly, the FTC found the company engaged in knowing violations. That is by definition corporate center. It's a finding that the company engaged in these violations. What are the cases that have actually found corporate centers? I understand it. We have the one hypothetical from the Seventh Circuit that if General Motors announces that it sold a million of a type of vehicle and they hadn't sold any, then we can infer that some higher up knew that was false. That's an extreme case. Nothing like this case. Do you have any other case? There's several cases that we cite in our brief. For example, on page 44 of our brief, there's the Second Circuit's decision in Lorelei that sets out the standard. There's also the BHP. I want a case where it's applied. Where they actually found the corporate center. Yes, Your Honor. In the BHP Billiton case, it was found that because a high up enough executive knew of what was going on, that could be attributed to the company. In that case, did they actually show that the higher executive knew? I believe that there was evidence about that specific executive. Because if that's the circumstance, that's not a problem. I mean, if one of the defendants, if there was sufficient evidence of one of these defendants, that would probably be attributed to the corporation. We're talking about a case where we don't have an identifiable executive, but you just know somebody must have. Well, the key in that case is that it wasn't actually one of the defendants who knew, that the person who makes the statement doesn't have to be the person with Sienter. And so there's also cases where, because government investigations are going on for long enough, it becomes clear that people in the company knew in the course of that investigation that the allegations that were at issue in the investigation became apparent. So for example, in the ITT case that we cite in our brief, specifically holds that in the course of a year's long investigation, the plaintiffs don't need to point to the exact point in time at which the problematic behavior became known. Because, of course, at some point during those investigations, it became known. And that's exactly what happened here. There was a year's long investigation with the DOJ and with the FTC that culminated in the company's admitting to knowing in multiple violations and culminated in the FTC's finding of knowing violations. So it's really just a question of when, in the course of that year's long investigation, that the company presented documents and presented witnesses to the government that it became known. Let me ask one question about the FTC. There was no secret about the FTC findings in their investigation. That was being reported by the company, was it not? The fact of the investigation was being reported, but what the FTC actually found was not reported. So for example, the FTC's saying in its complaint that finally was revealed in January of 2017 that there was hundreds of thousands of transactions and billions of dollars worth of transactions and internal fraud policy reports, that wasn't known until later. And when you look at what the FTC revealed, it was so widespread. The list of countries where this occurred is, there's a list of 20 or so countries where the FTC found these problems. So how would the individual defendants have known what the FTC was finding? Well, they would have been apprised in the course of the government's investigations. How? Well, there's also an important allegation against an individual, Stuart Stockdale, who's not an individual defendant, but did actually make a statement of legal compliance. And his say-enter can also be attributed to the company because he is alleged in the DOJ settlement to have committed one of the most egregious acts where he tried to cover up one of the China corridor agents who was facilitating human trafficking. He told the CEO in 2010 that he's going to try and save that agent. That's one of the key allegations that the DOJ found that the company admitted to. And Stuart Stockdale was a high-level executive. He made a statement in 2012. His say-enter can be attributed to the company at least through October 2012 when he mysteriously resigned from the company. I'd like to reserve some time for rebuttal, Your Honors, if that's OK. May it please the Court. My name is Hillis Shepard, and I represent the defendants' appellees. This case is about three individuals, the CEO of Western Union, Mr. Ercik, and two successive chief financial officers, Mr. Shireman and Mr. Agrawal. And I'll note that Mr. Grunfeld said essentially nothing about what any of these three individuals knew at the times they made their statement, expressing their belief in Western Union's current compliance. Mr. Grunfeld's complaint, Judge Baldock, he really did not point you to any strong inference that any of these three defendants knew at the times they made their statements that there was ongoing illegal conduct occurring at Western Union by certain employees. And really, it's important to understand what is the conduct here. Judge Hartz, it's not that fraud is happening by fraudsters. Obviously, it's similar to when there's credit card fraud going on that does not indicate that there are violations of law by bank. It's not even that agents are complicit. Here, the violations are whether Western Union employees, knowing that there are problems with certain agents, did not take appropriate action to discipline those agents. And there's simply no allegations in this complaint that give rise to a strong inference that these particular individuals had knowledge at the times they made their statements. Again, expressing their belief in current legal compliance, that they had knowledge that there were any ongoing violations of law. What about the example he gave about the agent in India who had been found engaging in improper behavior and then there's a board meeting several months later and the board members were advised that nothing had been done to correct this. How do you respond to that? That's one specific example he gave, if I understood him correctly. And I believe that's a really isolated incident. That is a one-paragraph report in a particular board material, which it's not really established, I think, that our three defendants even saw that, but it's one paragraph. Would they not have been given it? They may not have read it, but they not have been given this material? Only one of the defendants is a member of the board, Your Honor, and it's not at all clear that the chief financial officers would have attended these board meetings. Let's take the board member then. Excuse me? Let's take the board member then. Fair enough. It's a one-paragraph snippet in a board material about an agent in India that had been escalated to regional compliance. There are no facts whatsoever that suggest what happened after regional compliance undertook its investigation. And again, it's important to recognize- Explain. You said had been escalated to regional compliance. I don't know what that means. I appreciate that. So what happens, Your Honor, is when a particular agent has transferred or been involved in a certain number of situations where there's a complaint by a transaction, that triggers a duty or, in general, it triggers an obligation at the company to take a look at what's going on with this agent. It may simply be that there's a fraudster who's moved in nearby close to the agent. The mere fact that there are complaints, that there are fraudulent transactions does not mean that there's anything wrong with the agent at all. So in this situation, this is actually a good example of Western Union's What the board is told is that they're looking at an agent. There's a regional compliance group that is going to be looking at this agent. And to me, and I think another panel of this court already looked at these very same board materials in the City of Cambridge case decided last April. This is an example of Western Union's compliance working well. Certainly not- You said that the board material says that they will be looking into it. It says that- It's been going on for months, and now they're just getting around to it. That doesn't sound like great compliance. I don't agree with that, Your Honor. It says that it's been escalated to regional compliance, but there are no facts at all. Maybe there would be a report later, months down the road, as to what happened with that review. There's no facts here that suggest anything about what happened with that review. It's simply alerting the board that there is an agent that they're going to be looking into. It doesn't tell us that there's any violations of law even at that agent, let alone that Western Union employees are making a bad decision with regard to that compliance. I also want to address the question of the wrong standard, which Mr. Grunfeld relied on that the district court supposedly entered or applied. I think it's important to recognize at the outset that the standard of review here is de novo, but it is really impossible to read the district court's decision when it's read fairly and entirely. It makes very clear in no uncertain terms that the district court did not find a strong inference of scienter. The suggestion that the district court did not engage with the facts, it just simply cannot be squared. Our review is de novo anyway, isn't it? It's de novo. That's correct, Your Honor. Thank you. Let me ask you this, in looking at your arguments in the briefs, do you concede the fact that the government investigation, while it may not be sufficient alone, that that can be a strong inference of scienter? Because you had the government investigating, so that in and of itself, while it may not be sufficient to make out a case, can be considered wrong, right? You concede that? I agree that the government investigations can be considered, but the government investigations do not shed light on what these specific individuals knew at the times they made their statements about current compliance. All right. I see what you're arguing there. Right. The government investigations were about past events. The DPA only goes through 2012. And as for the FTC's complaint, first of all, the FTC acknowledged in 2011 and 2012 that Western Union had made improvements to its compliance. It found afterwards that in certain instances, there was a failure to discipline agents. Those certain instances are copied by the plaintiff into paragraph 167 of the complaint. But the FTC never suggests that any of these top executives knew about these certain instances, and Western Union has not conceded that those were itself violations of law. There's simply no allegations here that give rise to a strong inference that any of these three individuals was apprised or believed that there were ongoing violations of law by Western Union employees at the times they expressed their beliefs. You should be pretty familiar with the facts of this case. Can you, in your review of this, say what you believe were the strongest facts against your client? Against my client? Oh, dear. Honestly, Your Honor, there are . . . It's kind of like a sufficiency of the evidence question. What did you glean, if anything? Your argument is, oh, well, no, I didn't see anything, but is there anything that possibly could be that way in this record? I really don't believe so, Your Honor, that would give rise to a strong inference, and that's because there's very few allegations here about what any of these three individuals knew. And I'll point you to the confidential witnesses, which is interesting. A lot of securities fraud cases are really hinged on confidential witnesses. They have four confidential witnesses here, one of whom claims to have talked to Mr. Ercik about compliance. And it's interesting to me that not one of them claims that he told any of these three individual defendants that there were ongoing violations of law at the time they made their statements. None of them claims that the defendants have reason to know that there were ongoing violations of law, again, as they made their comments about current compliance. And most importantly, none of them even claims that he or she himself or herself believed that there were any ongoing violations of law. And these omissions are important. The Supreme Court's decision in Tell Labs has made clear that omissions count against a finding of scienter. I would like to address the- I'm sorry. What was that last point? I'm sorry? Well, repeat that last point. You said- In the Tell Labs case, the Supreme Court is very clear that when there's an omission or an ambiguity, and here I would say the fact that confidential witness number four claims to have talked to Mr. Ersic about compliance, but specifically does not say that there were any ongoing violations of law conveyed, that omission should count against a finding of scienter. I also want to address the corporate scienter questions. You're correct that the Tenth Circuit has not yet ruled on corporate scienter. But the key thing here, and all of the circuits, there's some murkiness in the law in terms of what corporate scienter requires, but at a minimum, all of the circuits that have addressed this have held that the person whose scienter is being imputed to the corporation must have had something to do with the statements that are at issue. Because the securities laws are not about any underlying misconduct that may have occurred at the company. The securities laws are about false and misleading statements made with scienter. And there's really no question here that the plaintiffs have not, they haven't alleged that anybody at the company had anything to do with the 10 case statements that the individual defendant signed or that the investor calls, other than the named defendants. I don't identify anyone. The people that are alleged to have known about the compliance violations, again, mostly people who may have been involved in failures to discipline agents, mostly overseas. There's no suggestion that any of those people had anything whatsoever to do with the false and misleading statements. What about the fellow who resigned in October of 2012? Yes. Thank you, Your Honor. Mr. Stockdale. So the only allegation that Mr. Grunfeld has pointed to regarding Mr. Stockdale is an allegation that two years before the class period started, he sent an email to the CEO saying, we're trying to save an agent. That just indicates that there's remediation going on potentially for that agent. It doesn't indicate that there's a violation of law. But Mr. Stockdale is not alleged to have had anything whatsoever to do with the statements. And I would say that there's no strong inference that Mr. Stockdale knew that there were violations of law going on even in 2010, two years before the class period. And no other individuals identified either. I think it's important to recognize here, for example, that the two chief financial officers, and I'll just use them as an example, they're not alleged to have had anything at all to do with disciplining agents, or even about compliance more generally. There's really nothing alleged in this complaint that suggests that they would have known, and certainly not that would give rise to a strong inference, that either of these two gentlemen knew about ongoing compliance violations. I think it's particularly interesting for Mr. Agrawal, who is alleged to have signed the 10K statements expressing belief in the company's current compliance in 2014, 2015, and 2016. Because there's really almost nothing, maybe nothing alleged in the complaint, going back to your question, Judge Baldock, about what was known at that time, at any of those times, about the state of the company's compliance. So, I think that's important. And just to go back to Mr. Grunfeld's reliance on the deferred prosecution agreement itself, I mean, again, there's nothing in that document, or in the FTC complaint, that suggests that any of these defendants had any knowledge about the violations of law that were happening at that time, or that they condoned any illegal conduct going on at that time. Mr. Grunfeld said that the DPA, by itself, gives rise to the strong inference. It just simply does not, as to these three individuals. And I'll remind you all that the Department of Justice itself, as part of the DPA, really praised Mr. Ercik's commitment to compliance, starting in 2010. And just to give a little bit more context, I want to remind the Court that this is a situation where the company has, this is the largest money transfer company in the world, it has operations in 200 different countries, and it has 550,000 agents worldwide. So it just doesn't make sense that, and certainly there's no particularized allegation to suggest that any of these three defendants knew about any violations at any of these agents around the world. Thank you.  Thank you. I want to address the point of the DOJ noting that Defendant Ercik engaged in some remediation after 2012. The fact that he engaged in remediation doesn't mean that the company's compliance practices all of a sudden became totally in conformity with legal standards overnight. It takes time to fix them. Even as of December 2012, Spain's regulator found that the company entirely lacked adequate compliance. So the fact that Ercik was involved in trying to remedy the failures, if anything, just shows that he knew what the problems were. It's important to realize what the misstatements here were. He and the individual defendants attested to the company's legal compliance. They didn't have to do that. They could have remained silent, they could have been open about what was going on, they could have discussed how they were in the process of trying to remedy the failures. But instead they affirmed that the company was in legal compliance, sometimes with statements of belief and sometimes with non-opinion statements. That's also why this court's recent decision in the city of Cambridge case does not control the results here. That case dealt with a different legal standard about whether the board totally ignored compliance, not whether there were statements saying that the company was in legal compliance. It also dealt with a different set of defendants and expressly declined to address Ercik's In my remaining seconds, I just want to note that Defendant Stockdale did in fact make a statement of legal compliance. Thank you, Your Honor.